UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CENTERBOARD SECURITIES, LLC,   )
   )
       Plaintiff,   )
   )     CIVIL ACTION NO.
VS.   )
   )     3:15-CV-2611-G
BENEFUEL, INC.,   )
   )
       Defendant.   )

## MEMORANDUM OPINION AND ORDER

Before the court are the defendant's motions (1) to alter or amend the judgment, or (2) for a new trial (docket entry 204).  For the reasons stated below, the defendant's motions are denied.  The court set forth the background of this case in two recent opinions.  *See* Memorandum Opinion and Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment (docket entry 139); Memorandum of Decision ("Opinion") (docket entry 200).

## I. ANALYSIS

### A.  Legal Standard

Motions for a new trial or to alter or amend the judgment must clearly establish either a manifest error of law or fact or must present newly discovered

evidence. *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (citations omitted). Such motions may not be used to relitigate issues that were resolved to the movants' dissatisfaction, *Salinas v. Wal-Mart Stores Texas, LLC*, No. 3:10-CV-1691-L, 2010 WL 5136106, at *5 (N.D. Tex. Dec. 16, 2010) (Lindsay, J.) (citing *Forsythe v. Saudi Arabian Airlines Corporation*, 885 F.2d 285, 289 (5th Cir. 1989)), nor may they be used to raise arguments or present evidence that could have been presented prior to entry of judgment, *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). A motion for a new trial may be appropriate, however, to prevent manifest injustice. *Amir-Sharif v. Commissioners of Dallas*, No. 3:07-CV-0175-G, 2007 WL 1308314, at *1 (N.D. Tex. May 4, 2007) (Fish, C.J.) (citing *Fresh America Corporation v. Wal-Mart Stores, Inc.*, No. 3:03-CV-1299-M, 2005 WL 1253775, at *1 (N.D. Tex. May 25, 2005) (Lynn, J.)). The burden rests with the party seeking a new trial to show that "prejudicial error has crept into the record or that substantial justice has not been done. . . ." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999), *cert. denied*, 529 U.S. 1019 (2000).

The decision to alter or amend the judgment under Rule 59(e) is within the district court's discretion. *Stroman v. Thaler*, No. 3:05-CV-1616-D, 2009 WL 3295128, at *1 (N.D. Tex. Oct. 9, 2009) (Fitzwater, C.J.) (citations omitted). "[W]hile a district court has considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration, such discretion is not limitless."

*Templet v. Hydrochem Inc.*, 367 F.3d 473, 479 (5th Cir.), *cert. denied*, *Irvin v. Hydrochem, Inc.*, 543 U.S. 976 (2004).  Reconsideration of a judgment is an extraordinary remedy that should be used sparingly.  *Stroman*, 2009 WL 3295128, at *1.  "Indeed, the remedy is so extraordinary that the standard under Rule 59(e) favors denial of motions to alter or amend a judgment."  *Berry v. Indianapolis Life Insurance Company*, No. 3:08-CV-0248-B, 2009 WL 1979262, at *1 (N.D. Tex. July 8, 2009) (Boyle, J.) (citations and internal quotation marks omitted).  There are, however, two important judicial imperatives that the court must consider on a Rule 59 motion:  "1) the need to bring litigation to an end; and 2) the need to render just decisions on the basis of all the facts."  *Templet*, 367 F.3d at 479 (citations omitted).  "The task for the district court is to strike the proper balance between these competing interests."  *Id.*

## B. Application

Benefuel has three primary contentions:  (1) that the term "investment" is ambiguous and only includes equity transactions; (2) that "current investor" is ambiguous and that the court erred by holding that "current investor" did not include Koch Industries, Inc. and all of its affiliates; and (3) that the court erred by not applying the pro rata ownership clause when calculating the success fee. Defendant's Motion for a New Trial and to Alter or Amend the Judgment (docket entry 204); Defendant's Brief in Support of Its Motion for a New Trial and to Alter or Amend the Judgment ("Defendant's Brief") at 1, 6, 10 (docket entry 205).

1.  *"Investment"*

a.  Whether the Term "Investment" Is Ambiguous

Benefuel contends that the court erred when it held that the term "investment" includes both equity and debt.  Defendant's Brief at 1-2.  When analyzing whether a term is ambiguous, courts look to whether the term is susceptible to the interpretation submitted by one of the parties.  *Seaford Golf & Country Club v. E.I. duPont de Nemours & Company*, 925 A.2d 1255, 1261-62 (Del. 2007).  In the opinion, the court rejected Benefuel's proposed interpretation of "investment," concluding that limiting the term "investment" to equity transactions is an unreasonable.  Opinion at 17-18.  The breadth of the term "investment" precluded the court from restricting its definition solely to equity.  *Id.*  The court looked to the plain meaning of the term "investment," examined the proposed definitions submitted by the parties, and concluded that the term "investment" was not reasonably susceptible to the definition submitted by Benefuel.  *See* Opinion at 17-19.  Thus, Benefuel has failed to show that the court erred in holding that the term "investment" was not ambiguous.

b.  Extrinsic Evidence

Benefuel contends that the court erred by "fail[ing] to consider evidence of the parties' communications in addition to drafts of the agreement."  Defendant's Brief at 2.  However, the court considered and rejected the extrinsic evidence before it.

Opinion at 19-22. Benefuel contends that the parties intended for the term "investment" to include both debt and equity because "the goal of the agreement was to raise equity" and that was understood by Kevin Singer at Centerboard. Defendant's Brief at 2-3. Benefuel also contends that the pricing of the success fee, 7%, is evidence that the parties intended for "Transaction" to refer to only equity and not debt. *Id.* at 4. Moreover, Benefuel contends that equity is the only investment vehicle that would have made sense because it did not have income to make loan payments. *Id.* at 2-3.

However, the parties' communications are inconclusive and fail to show that the term "investment" can be reasonably limited to just equity. At most, the communications submitted by Benefuel show that equity was the preferred source of funding. Benefuel failed to mention that Benefuel's CEO, Robert Tripp, told chairman, Tom Ryley, that he "[w]as fine with" removing the words "preferred equity" as a limitation to the term "investment." *See* PTE 7. Other internal communications show that Benefuel believed that the term "investment" was not limited to equity. In an email, Tripp wrote that Centerboard "saw various ways to potentially finance this and didn't want it to be restricted to just equity" and that the engagement "contemplated any vehicle with respect to funding Beatrice." PTE 29. Looking to the note and purchase agreements for both the Mezzanine and the 2015

Transactions, the term "investment" is defined as including debt, equity, and loans. *See* PTE 101, at BENEFUEL000053; PTE 127, at FHR 5864.

The record is also replete with evidence demonstrating that Benefuel was in need of capital to prevent Flint Hills Resource Renewables, LLC from diluting Benefuel's ownership stake in the Beatrice project. The parties did not dispute that the cost of retrofitting the Beatrice plant had ballooned from $45 million in 2014 to $170 million in 2016. *See* Defendant's Proposed Finding of Fact at 2 (docket entry 181). In order to make the necessary payments to prevent the dilution of its stake in the Beatrice project, Benefuel sought to quickly raise money through or debt or equity -- whichever it could timely obtain. See *id.* at 3. In the opinion, the court concluded that "[w]hile Benefuel has presented some evidence that equity investments were its preferred source of funding, the court must adhere to the objective theory of contract law." *See* Opinion at 21. Considering the prior drafts and extrinsic evidence, the court correctly concluded that the term "investment" includes both debt and equity. *Id.* at 21-22. The court has not been persuaded that it should alter its conclusion.

Moreover, contrary to Benefuel's assertion, the court did not modify its interpretation of the term "investment" in its work fee (equity) analysis. *See* Defendant's Brief at 4. The court held that "unlike the definition of Transaction, the work fee (equity) clause, by its plain language, contemplates payment only upon the

closing of a purely equity transaction." Opinion at 29. In other words, the work fee (equity) is triggered when capital is exchanged for equity in Benefuel. However, if the transaction involves debt, then the work fee (equity) would not be triggered. The court simply described the type of "Transaction" -- an equity investment -- that triggers the work fee (equity), but did not alter its interpretation of what constitutes an "investment" under the agreement. *Id.* Thus, the court did not inconsistently construe and apply the terms "Transaction" or "investment."

c. Whether the Mezzanine and the 2015
Transactions Were Loans

Benefuel contends that both the Mezzanine and the 2015 Transactions were loans, not "investments," and that "[a] loan is not an investment." Defendant's Brief at 5. Benefuel also attempts to distinguish *Greenwald v. Batterson*, Civ. A. No. 16475, 1999 WL 596276 (Del. Ch. July 26, 1999), by contending that "the 2014 Mezzanine Loan Transaction did not include a conversion option if the debt was not repaid." Defendant's Brief at 6.

In the opinion, the court cited *Greenwald* for the proposition that the term "investment" includes transactions involving both debt and equity. *See* Opinion at 18-19. The court stated:

> *Greenwald* is an example of an investor's purchase of "bonds with interest payable at the rate of 8% per year in cash, or additional debt, convertible to [the company's] common stock." Debt transactions structured like this are presumably less risky than pure equity investments but,

- 7 -

> under the dictionary definition, are investments
> nonetheless.

*Id.* at 18.  *Greenwald* describes a transaction consisting of both debt and equity as an

"investment."  See *Greenwald*, 1999 WL 596276, at *2.  The transactions at issue

here also have aspects of both debt and equity and, therefore, are reasonably

characterized as "investments" under *Greenwald*.  The Mezzanine transaction involved

the issuance of units comprised of secured promissory notes and warrants.  *See* PTE

101, 103.  The 2015 transaction consisted of the issuance of notes convertible to

common stock.  *See* PTE 127, 128-29.  Benefuel has failed to point out any material

distinctions between the instant transactions and the transaction in *Greenwald*.

Moreover, as discussed above, the note and purchase agreements for both the

Mezzanine and the 2015 Transactions define the term "investment" as including

debt, equity, and loans.  *See* PTE 101, at BENEFUEL000053; PTE 127, at FHR

5864.  Accordingly, Benefuel has failed to show that the court erred in its

construction and application of the term "investment."

## 2.  *"Current Investor"*

Benefuel contends that the term "current investor" is ambiguous and

encompasses Koch Industries, Inc. and all of its affiliates, including, FHR Treasury I,

LLC ("FHR").  *See* Defendant's Brief at 6-7.  In its closing argument brief, Benefuel

stated that "[h]ere, 'current investor' meant any company currently invested in

Benefuel, through any vehicle chosen to invest in Benefuel, whether directly or indirectly."  Defendant's Closing Argument Brief at 5 (docket entry 198).

However, Benefuel's interpretation of the term "investor" to include a parent company and all of its affiliates is not reasonable.  See *id.* at 7.  As the court stated in its opinion, Benefuel's proffered definition expands "current investor" well-beyond its plain meaning.  *See* Opinion at 26.  FHR was not in existence at the time that the engagement agreement was signed and the agreement did not reasonably contemplate FHR and Koch Industries, Inc. as the same entity.  *Id.* at 24-27 (citing *Case Financial, Inc. v. Alden*, No. 1184-VCP, 2009 WL 2581873, at *4 (Del. Ch. Aug. 21, 2009) (holding that corporate formalities are disregarded "only in the 'exceptional case'") and *Vichi v. Koninklijke Philips Electronics N.V.*, 62 A.3d 26, 49 (Del. Ch. 2012) (holding that the corporate structure of the "Phillips family of companies" should not be eradicated despite the Phillips' slogan of "One Phillips")).  Moreover, as the opinion notes, the parties knew how to add the term "affiliates" or specifically define "current investor," but did not do so.  *Id.* at 26.  Thus, Benefuel has not shown that the court erred in its construction and application of the term "current investor."

3. *Success Fee*

Lastly, Benefuel has not demonstrated that the court erred in calculating the success fee. As discussed in the opinion, the pro rata ownership clause[*] is only implicated when there is an investment by a "current investor." Opinion at 22-23, 27. Here, the court determined that FHR was not a "current investor." Therefore, the court did not err in holding that the pro rata ownership clause did not apply to the transactions at issue.

## II. CONCLUSION

For the reasons stated above, the defendant's motions are **DENIED**.

**SO ORDERED**.

March 23, 2017.

A. JOE FISH
**Senior United States District Judge**

---

[*]    "[F]or current investors of the Company . . ., the 7% Success Fee will be applied to *only that Aggregate Investment which increases their pro rata equity ownership*." *See* PTE 15; DTE 13 (emphasis added).

- 10 -